**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CELLULAR SOUTH, INC.** | ) | |
| **D/B/A C SPIRE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:25-cv-01756-X** |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **C-SPIRE CONSULTING SERVICES** | ) | |
| **PRIVATE LIMITED D/B/A CSPIRE** | ) | |
| **DIGITAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION REQUESTING DEFAULT JUDGMENT AGAINST DEFENDANT
<u>C-SPIRE CONSULTING SERVICES PRIVATE LIMITED D/B/A CSPIRE DIGITAL</u>**

i

## TABLE OF CONTENTS

I. FACTUAL BACKGROUND ................................................................................................ 1

II. LEGAL STANDARD .................................................................................................... 4

III. ARGUMENT AND AUTHORITIES ................................................................................ 4

    A. Defendant Was Properly Served and Has Defaulted by Its Failure to Answer or Otherwise Defend. ................................................................................................ 4

    B. A Default Judgment, on the Only Claim for Which Plaintiff Seeks Relief Through this Motion, Is Appropriate. ............................................................................................ 7

        1. *Because Plaintiff Properly Pleads a Claim Under the ACPA, the Court Should Order that the CSpire Digital Domain Name Be Transferred to Plaintiff.* ............................. 8

        2. *Injunctive Relief Is Appropriate to Effectuate the Relief Plaintiff Seeks Through Its ACPA Claim.* ........................................................................................................11

        3. *Because Plaintiff Is Foregoing Any Monetary Relief (i.e., Damages or Attorneys' Fees), No Additional Evidence or a Hearing Is Necessary.* ......................................... 13

IV. PRAYER ................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Alpha Chi Omega*,
708 F.3d 614 (5th Cir. 2013) .........................................................................................11

*Chanel, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule A*,
No. CIV. A. H-12-02085, 2013 WL 5425252 (S.D. Tex. Sept. 26, 2013) ........................10, 11

*Deckers Outdoor Corp. v. Owner of ahnu.com*,
No. CV 24-1698, 2024 WL 5159302 (E.D. La. Dec. 18, 2024) ......................................10, 13

*Escalante v. Lidge*,
34 F.4th 486 (5th Cir. 2022) ......................................................................................4, 10

*GS Holistic, LLC v. Kenny Gee's LLC*,
Civ. Action No. 4:23-cv-00628-O, 2024 WL 386157 (N.D. Tex. Jan. 8, 2024)
(Ray, M.J.) ....................................................................................................................9

*Harper v. King*,
Civ. Action No. 3:22-cv-00097-X, 2022 WL 10613547 (N.D. Tex. Oct. 18,
2022) (Starr, J.) ...................................................................................................4, 7, 8, 13

*Kiva Kitchen & Bath, Inc. v. Cap. Distrib., Inc.*,
Civ. Action No. H-06-2562, 2008 WL 11452433 (S.D. Tex. Apr. 22, 2008) .........................8

*Lindsey v. Prive Corp.*,
161 F.3d 886 (5th Cir. 1998) ...........................................................................................7

*Seattle Bank v. Dulworth*,
No. 4:22-CV-01036-O, 2023 WL 9005642 (N.D. Tex. Dec. 13, 2023) (Ray,
M.J.) ...........................................................................................................................13

*Sting Soccer Grp., L.P. v. Rated Sports Grp., L.P.*,
Civ. Action No. 3:21-CV-0964-B, 2021 WL 5280972 (N.D. Tex. Nov. 12,
2021) (Boyle, J.) .........................................................................................................8, 10

*Viahart, LLC v. Does 1–54*,
Case No. 6:18-CV-604-RWS-KNM, 2021 WL 777083 (E.D. Tex. Jan. 29,
2021) ...........................................................................................................................13

*VPI Holding Co. v. Success Res. USA LLC*,
Civ. Action No. 3:12-CV-3785-N, 2014 WL 12584331 (N.D. Tex. Dec. 2,
2014) (Godbey, J.) .....................................................................................................11, 12

*Wooten v. McDonald Transit Assocs., Inc.*,
   788 F.3d 490 (5th Cir. 2015) ......................................................................................4, 8

**Statutes**

15 U.S.C. § 1116(a) ...........................................................................................................11

15 U.S.C. § 1125.......................................................................................................9, 10, 12

TEX. BUS. ORG. CODE § 5.251 ...........................................................................................6

TEX. BUS. ORG. CODE § 9.001 ...........................................................................................5

TEX. BUS. ORG. CODE § 9.251 ...........................................................................................5

**Other Authorities**

FED. R. CIV. P. 4(h)(1)(A) ...................................................................................................6

FED. R. CIV. P. 5(a)(2).....................................................................................................6, 16

FED. R. CIV. P. 8..............................................................................................................4, 8

FED. R. CIV. P. 55....................................................................................................1, 4, 5, 13

Plaintiff Cellular South, Inc. d/b/a C Spire ("Plaintiff") files its Motion Requesting Default Judgment Against Defendant C-Spire Consulting Services Private Limited d/b/a CSpire Digital (the "Motion"), and, in support, respectfully states as follows:

On July 7, 2025, Plaintiff filed its Complaint against Defendant C-Spire Consulting Services Private Limited d/b/a CSpire Digital ("Defendant"). Plaintiff has served Defendant; Defendant's deadline to answer or otherwise defend has passed; and the Clerk has entered default against Defendant. Accordingly, Plaintiff requests that the Court issue a default judgment against Defendant pursuant to FED. R. CIV. P. 55(b), based on the terms set forth below. For clarity, and as explained below, Plaintiff solely seeks *non-monetary relief* through its requested default judgment—not damages or attorneys' fees—to help expedite this Motion and bring this case to a close through a final judgment.[1]

## I.    FACTUAL BACKGROUND

Plaintiff is a technology and telecommunications company that is the largest privately owned wireless communications company in the United States.[2] Plaintiff owns the well-known mark "C SPIRE," which Plaintiff has used continuously and extensively in connection with its services since at least as early as 2011.[3] Plaintiff continues to use this mark nationwide today, including within Texas.[4] The mark is used in connection with all types of Plaintiff's goods and services and has become a well-known indicator of source for Plaintiff's goods and services.[5]

---

[1] If Defendant appears prior to the issuance of a default judgment or later seeks to set aside the default judgment, Plaintiff reserves the right to seek relief as to all of its claims, including, but not limited to, monetary damages and attorneys' fees.

[2] Compl., ¶ 8.

[3] *Id.*, ¶ 9.

[4] *Id.*

[5] *Id.*, ¶ 10.

1

Plaintiff owns and has the exclusive right to use the following marks (the "C SPIRE Marks") by virtue of its federal registrations[6]:

| Mark | U.S. Reg. # | First Use in Commerce |
|---|---|---|
| C SPIRE | 4797624 | 9/30/2011 |
| C SPIRE | 5349108 | 9/30/2011 |
| c spire (logo) | 4679223 | 9/30/2011 |
| c spire (logo) | 5349109 | 9/30/2011 |
| C SPIRE WIRELESS | 4460790 | 9/30/2011 |
| c spire wireless (logo) | 4660485 | 10/1/2011 |
| C SPIRE FIBER | 4785958 | 7/1/2013 |
| C SPIRE BUSINESS | 5680643 | 10/31/2017 |
| C SPIRE CODING CHALLENGE | 5534692 | 4/30/2017 |

Plaintiff is likewise the owner of the domain name <cspire.com>, at which it hosts its primary website.[7]

In addition to Plaintiff's rights in the C SPIRE Marks due to its federal registrations of the marks, Plaintiff also has substantial common-law rights in the C SPIRE Marks because of

---

[6] *Id.*, ¶ 11 & Compl., Ex. 5.
[7] *Id.*, ¶ 13; *see also* Compl., Ex. 6 (screenshots from Plaintiff's website).

2

Plaintiff's extensive and continuous use of those marks, in Texas and throughout the United States, in connection with Plaintiff's goods and services since at least 2011.[8]

In or about 2024, Defendant began using <cspiredigital.com> (the "CSpire Digital Domain Name") for its website (the "CSpire Digital Website").[9] Defendant's business purports to be a technology-consulting business, and, in 2024, Defendant offered its services on its website under the mark "C-Spire Consulting Services."[10]

Plaintiff became aware of Defendant's registration and use of the CSpire Digital Domain Name in or about May 2025.[11] Plaintiff's counsel sent a letter to Defendant's CEO on May 9, 2025, notifying Defendant that its use of "CSpire" in connection with services similar to Plaintiff's services was likely to cause confusion.[12] Plaintiff requested that Defendant stop all use of its "CSpire"-related marks.[13] Although Defendant initially responded through counsel, Defendant did not comply with Plaintiff's requests.[14] Defendant has since stopped responding to Plaintiff, necessitating this lawsuit.[15]

As of the date of this Motion, Defendant continues to use the CSpire Digital Domain Name, C SPIRE Marks, and marks substantially similar to the C SPIRE Marks, including "CSpire Digital," that are likely to cause confusion or mistake in the minds of the public.[16]

---

[8] *Id.*, ¶¶ 9–10, 14.

[9] *Id.*, ¶ 15.

[10] *Id.*; *see also* https://web.archive.org/web/20240723055835/https://www.cspiredigital.com/.

[11] *Id.*, ¶ 16.

[12] *Id.*, ¶ 18; *see also* Compl., Ex. 7. Plaintiff erroneously stated in its Complaint that Plaintiff sent the letter on May 5, 2025. Compl., ¶ 18. But, as the letter itself reflects, the letter was sent on May 9, 2025. Compl., Ex. 7.

[13] Compl., ¶ 18; *see also* Compl., Ex. 7.

[14] *See* Declaration of Angela Holt in Support of Motion for Default Judgment ("Holt Decl."), attached as **Exhibit A**, ¶ 6.

[15] *Id.*, ¶¶ 7–11.

[16] *See id.*, ¶¶ 2–3.

## II.    LEGAL STANDARD

A court may render a default judgment against a party who has not filed a responsive pleading or otherwise defended the suit. FED. R. CIV. P. 55(a)–(b). Where a defendant has not filed any responsive pleadings, the well-pleaded allegations in the complaint are deemed admitted, leaving no material facts in dispute. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) ("The defendant, by his default, admits the plaintiff's well[-]pleaded allegations of fact . . . ." (citation omitted)); *see also Harper v. King*, Civ. Action No. 3:22-cv-00097-X, 2022 WL 10613547, at *2 (N.D. Tex. Oct. 18, 2022) (Starr, J.) ("[T]here are no material facts in dispute because the respondents failed to file any responsive pleadings . . . ."). Thus, the court must review the complaint to ensure it states a sufficient basis for relief—meaning a short-and-plain statement of the claim giving fair notice to the defendant and raising "a right to relief above a speculative level." *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (evaluating the sufficiency of plaintiff's allegations in a default-judgment context under FED. R. CIV. P. 8(a)(2) and requiring only that the complaint "be enough to raise a right to relief above a speculative level" (citation omitted)).

## III.    ARGUMENT AND AUTHORITIES

In general terms, a court's default-judgment analysis proceeds in two steps: (1) the court determines whether a default judgment is procedurally appropriate; and (2) the court analyzes the operative complaint to ensure it sufficiently pleads a claim for relief. *See Harper*, 2022 WL 10613547, at *2. Plaintiff addresses each step below.

### A. Defendant Was Properly Served and Has Defaulted by Its Failure to Answer or Otherwise Defend.

On July 18, 2025, Defendant was served with service of process, making its deadline to answer or respond to the Complaint August 8, 2025. Dkt. 12. Because Defendant did not answer

4

or otherwise defend this action, Plaintiff requested, and the Clerk entered, default on August 13, 2025. Dkt. 14. Because Defendant is an entity, and thus cannot be a minor, incompetent, or an armed-services member, those issues do not bar entry of a default or default judgment in this case. *See* FED. R. CIV. P. 55.

Plaintiff's service of Defendant through the Texas Secretary of State is proper in this case. Dkt. 12. Under Texas law, a party that "transacts business" must register with the Texas Secretary of State. *See* TEX. BUS. ORG. CODE § 9.001. For at least the following reasons, Defendant has "transacted business" in Texas: (a) Defendant represented on its website that it maintained an office in Irving, Texas[17]; (b) Defendant's CEO represents himself as located in Plano, Texas[18]; (c) Defendant, or three of its employees or personnel, represent that three of Defendant's employees or personnel live in Texas[19]; and (d) Defendant represents itself as affiliated with the entity "Accurate Consulting Group," which in turn represents that it has the same office that Defendant previously represented it maintained in Irving, Texas.[20] *See* TEX. BUS. ORG. CODE § 9.251 (explaining what activities "do *not* constitute transaction of business in [Texas]" (emphasis added)); TEXAS SECRETARY OF STATE, *Foreign or Out-of-State Entities FAQs*: *Is my entity required to register?*, https://www.sos.state.tx.us/corp/foreignfaqs.shtml#required1 (last visited July 1, 2025) ("Generally, a foreign entity *is* transacting business in Texas if it has an office or an employee in Texas or is otherwise pursuing one of its purposes in Texas." (emphasis in original)). Because Defendant has not registered with the Texas Secretary of State for purposes of transacting business,[21] "[t]he [Texas] [S]ecretary of [S]tate is an agent of [Defendant] for purposes of service

---

[17] Compl., ¶ 6 & Compl., Ex. 1.
[18] Compl., ¶ 6 & Compl., Ex. 2.
[19] Compl., ¶ 6 & Compl., Ex. 3.
[20] Compl., ¶ 6 & Compl., Ex. 4; *see also* Ex. A (Holt Decl.), ¶ 14.
[21] *See* Ex. A (Holt Decl.), ¶ 4.

of process" due to Defendant "transact[ing] business in this state without being registered as required." TEX. BUS. ORG. CODE § 5.251; *see also* FED. R. CIV. P. 4(h)(1)(A).

This service of process is proper in and of itself, and Plaintiff has no further obligation to apprise Defendant of this lawsuit or its developments. FED. R. CIV. P. 5(a)(2). Nevertheless, Plaintiff has informed Defendant of this lawsuit in manners other than formal service of process, and Defendant is aware of the dispute and lawsuit.

Specifically, Plaintiff sent Defendant's CEO an initial demand letter (via overnight mail and email) on May 9, 2025.[22] On May 16, 2025 and May 20, 2025, an India-based attorney sent response letters to Plaintiff's counsel, thus proving that Defendant's CEO received the May 9, 2025 letter.[23] In turn, Plaintiff's counsel responded to Defendant's attorney on June 9, 2025, informing Defendant that Plaintiff would file suit unless "[Defendant] [would] agree in writing within five (5) days of the date of this letter to cease use" of the C SPIRE Marks.[24] Having received no response, Plaintiff's counsel followed up with an email on June 13, 2025.[25] Plaintiff filed this lawsuit on July 7, 2025, and on the same day provided a file-stamped copy of the Complaint to Defendant (through its attorney) by email.[26] On July 14, 2025, Plaintiff provided a file-stamped copy of the Complaint via email to Defendant's CEO at the email address Plaintiff used for its May 9, 2025 letter, with a copy to Defendant's attorney as well.[27] Thus, Defendant and its representatives have been made amply aware of this lawsuit.

---

[22] Compl., Ex. 7; *see also* Ex. A (Holt Decl.), ¶ 5.
[23] *See* Ex. A (Holt Decl.), ¶ 6.
[24] *See id.*, ¶ 7.
[25] *See id.*, ¶ 8.
[26] *See id.*, ¶ 9.
[27] *See id.*, ¶ 10.

6

Furthermore, while Plaintiff is under no obligation to do so, Plaintiff will also provide Defendant notice of this Motion and the Clerk's Entry of Default (Dkt. 12) by sending both documents to Defendant in the following manners: (1) email to Defendant's attorney (to the email addresses associated with Defendant's May 16 and 20, 2025 letters), (2) internationally recognized courier to Defendant's attorney (at the address listed in Defendant's May 20, 2025 letter), (3) email to Defendant's CEO (in the same manner as Plaintiff's May 9, 2025 letter), and (4) internationally recognized courier to Defendant's CEO (in the same manner as Plaintiff's May 9, 2025 letter).

In sum, Defendant has defaulted in this case because Defendant has failed to answer or otherwise respond after Plaintiff properly served Defendant through the Texas Secretary of State. Defendant also has knowledge of this case through other forms of communication by Plaintiff to date. The Court can and should enter default judgment consistent with the claims and relief sought in Plaintiff's Complaint.[28]

### B. A Default Judgment, on the Only Claim for Which Plaintiff Seeks Relief Through this Motion, Is Appropriate.

Plaintiff pleaded four causes of action in its Complaint; however, in acknowledgment that Defendant is a foreign-headquartered entity who chose not to defend this lawsuit, and for the sake of efficiency, Plaintiff seeks only the following ***non-monetary*** relief, which relates to the Complaint's Count III: (1) a judgment finding that Defendant violated the Anticybersquatting Consumer Protection Act ("ACPA"); (2) an order transferring the CSpire Digital Domain Name to Plaintiff (pursuant to the ACPA); and (3) a permanent injunction ordering Defendant (and its officers, agents, and employees, and all persons acting in concert with them) to cease and refrain

---

[28] This procedural background recited in Part III.A also disposes of the six factors that courts frequently address when deciding whether to grant a default judgment. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *see also Harper*, 2022 WL 10613547, at *1–2.

7

from (a) using the CSpire Digital Domain Name and (b) registering or using any other domain name that contains the C SPIRE Marks or any domain name confusingly similar to the C SPIRE Marks (to effectuate and protect Plaintiff's ACPA-related relief).

### 1. Because Plaintiff Properly Pleads a Claim Under the ACPA, the Court Should Order that the CSpire Digital Domain Name Be Transferred to Plaintiff.

Once a plaintiff proves that a default judgment is procedurally appropriate, the Court must only determine whether a plaintiff's well-pleaded allegations support a viable claim for relief. *Harper*, 2022 WL 10613547, at *2. The relief sought through this Motion relates to only one of Plaintiff's claims—the ACPA claim (Count III).

There are three elements to an ACPA claim: "(1) [the defendant] registered, trafficked in, or used a domain name that is 'identical or confusingly similar to' the mark[s] at issue; (2) the mark was distinctive at the time the registrant registered the domain name; and (3) the registrant has 'a bad faith intent to profit from that mark.'" *Sting Soccer Grp., L.P. v. Rated Sports Grp., L.P.*, Civ. Action No. 3:21-CV-0964-B, 2021 WL 5280972, at *8 (N.D. Tex. Nov. 12, 2021) (Boyle, J.) (quoting 15 U.S.C. § 1125(d)(1)(A)). "Congress passed the ACPA in 1999 'to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks as internet domain names with the intent to profit from the goodwill associated with such marks—a practice commonly referred to as "cybersquatting."'" *Kiva Kitchen & Bath, Inc. v. Cap. Distrib., Inc.*, Civ. Action No. H-06-2562, 2008 WL 11452433, at *3 (S.D. Tex. Apr. 22, 2008) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 495 (2d Cir. 2000)).

Recognizing Plaintiff's burden is simply to satisfy the pleading standards of FED. R. CIV. P. 8(a), Plaintiff easily satisfies this standard as to all three elements. *See Wooten*, 788 F.3d at 497–

8

98, 500 (explaining that complaint was sufficient because it provided defendant with "fair notice" of the claim and that the review standard for Rule 12(b)(6) is *not* the standard). First, Defendant owns, operates, and uses the CSpire Digital Domain Name,[29] and that domain name's use of "CSpire" is, at the very least, confusingly similar to Plaintiff's C SPIRE Marks.[30] Second, the C SPIRE Marks were distinctive at the time Defendant registered and started using the CSpire Digital Domain Name, as the C SPIRE Marks are inherently distinctive and Plaintiff had used and registered the majority of its marks in 2011, and all of them by 2017, while Defendant only began using the CSpire Digital Domain Name in 2024.[31] Third, Defendant's registration and use of the CSpire Digital Domain Name in connection with Defendant's services—which are similar to Plaintiff's services—demonstrates Defendant's bad-faith intent to profit from Plaintiff's C SPIRE Marks.[32] Indeed, when Defendant originally registered the CSpire Digital Domain Name (<cspiredigital.com>), it was not even holding itself out as "CSpire **Digital**"; it was holding itself out as "C-Spire **Consulting Services**."[33] Thus, Defendant did not have any trademark or other intellectual-property rights in the <cspiredigital.com> domain name when it began using the CSpire Digital Domain Name.  *See* 15 U.S.C. § 1125(d)(1)(B)(i) (listing non-exhaustive factors

---

[29] Compl., ¶ 15.

[30] *See id.*, ¶¶ 15, 17, 18, 20, 27, 37, 43, 44 & Compl., Exs. 5–8.

[31] *Id.*, ¶¶ 9–11, 12, 15. Plaintiff sufficiently pleads the "distinctiveness" requirement of the second element of its ACPA claim through paragraph 12 of its Complaint. In any case, "C SPIRE" is at least "suggestive" under the *Abrecrombie* test, if not "arbitrary" or "fanciful," and, more importantly, Defendant's default means it has "not attempted to rebut the presumption of validity." *See GS Holistic, LLC v. Kenny Gee's LLC*, Civ. Action No. 4:23-cv-00628-O, 2024 WL 386157, at \*4–7 (N.D. Tex. Jan. 8, 2024) (Ray, M.J.) (describing default-judgment analysis for distinctiveness when mark was a "capital letter 'G with a slightly titled crossbar," and finding it distinctive).

[32] Compl., ¶ 43.

[33] *Id.*, ¶ 15; https://web.archive.org/web/20240723055835/https://www.cspiredigital.com/.

9

for determining "bad faith intent"—including whether a defendant had "trademark or other intellectual-property rights" in the domain name).[34]

Because Defendant sufficiently pleads each element of its ACPA claim, Plaintiff is entitled to the ACPA-specified relief of the "transfer of the [C Spire Digital Domain Name] to [Plaintiff]." 15 U.S.C. § 1125(d)(1)(C); *see also Sting Soccer Grp.*, 2021 WL 5280972, at *9 ("If a court finds an ACPA violation it 'may order the transfer of the domain name to the owner of the mark and may award statutory damages.'" (quoting *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 275 (5th Cir. 2002)). Multiple other courts in this Circuit have found that transfer of the domain name is an appropriate default-judgment remedy. *See, e.g.*, *Deckers Outdoor Corp. v. Owner of ahnu.com*, No. CV 24-1698, 2024 WL 5159302, at *6, 8 (E.D. La. Dec. 18, 2024) (granting default judgment and finding that "an order directing the third-party registrars and registries to effectuate the transfer [of the domain names] [was] appropriate"); *Chanel, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule A*, No. CIV. A. H-12-02085, 2013 WL 5425252, at *3, 5 (S.D. Tex. Sept. 26, 2013) (granting default judgment and finding "that the Subject Domain Names should be transferred to [plaintiff] or otherwise disabled").

Accordingly, Plaintiff requests that, in granting its Motion, the Court order Defendant and/or relevant third parties (e.g., domain-name registrars and registries) to take all necessary steps to transfer the C Spire Digital Domain Name to Plaintiff. *See Deckers Outdoor Corp.*, 2024 WL

---

[34] Plaintiff's allegation that Defendant had bad-faith intent to profit from the C SPIRE Marks is enough to support this Motion. *Escalante*, 34 F.4th at 492 ("A defaulting defendant is deemed to admit a plaintiff's factual allegations . . . ."). Nevertheless, the Court can further find bad-faith intent by Defendant based on Defendant's representation that it had an office in Irving, Texas prior to receiving Plaintiff's May 9, 2025 letter, but then removing that reference to Irving, Texas shortly thereafter. *Compare* Compl., ¶ 17 *with* Compl., Ex. 8; *see also* Ex. A (Holt Decl.), ¶¶ 12–13. Here, the Defendant's "intentional failure to maintain accurate contact information" is additional evidence of its bad-faith intent. 15 U.S.C. § 1125(d)(1)(B)(i)(VII).

5159302, at *6 ("Plaintiff requests that the Court enter an order (1) requiring the transfer of the domain name to [p]laintiff [and] (2) instructing third parties, such as domain name registrars and registries, to unlock the domain name and transfer it to [p]laintiff . . . . The Court finds that [p]laintiff is entitled to [these] two items of relief.").

### 2. *Injunctive Relief Is Appropriate to Effectuate the Relief Plaintiff Seeks Through Its ACPA Claim.*

The Lanham Act specifically contemplates injunctive relief "to prevent a violation under [the ACPA]." 15 U.S.C. § 1116(a) (referencing § 1125(d) (the ACPA)). And because Plaintiff's ACPA-related relief is premised on Plaintiff's superior rights in and ownership of the C SPIRE Marks, permanent injunctive relief is appropriate. *See Chanel, Inc.*, 2013 WL 5425252, at *4–5 (concluding that the "plaintiff [was] entitled to a permanent injunction," alongside its ACPA remedy ordering the transfer of the domain names, and that the ACPA transfer remedy "[gave] practical effect to the permanent injunction entered in th[e] case").

The "well-established" elements for a permanent injunction are:

> (1) that [plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013). But, in the context of trademark-related litigation (as is this case), the analysis is greatly simplified: "[T]he Fifth Circuit has affirmed a district court's permanent injunction, noting in the process that 'a leading treatise states, "All that must be proven to establish liability *and the need for an injunction* against infringement is the likelihood of confusion – injury is presumed."'" *VPI Holding Co. v. Success Res. USA LLC*, Civ. Action No. 3:12-CV-3785-N, 2014 WL 12584331, *6 (N.D. Tex. Dec. 2, 2014) (Godbey, J.) (emphasis added) (quoting Abraham, 708 F.3d at 627) (explaining that "likelihood of

11

confusion" satisfies the first two elements). That rationale is consistent with the Lanham Act more generally, which "provides that injunctive relief may be granted to 'prevent the violation of any right of the registrant of a registered mark.'" *Id.* (quoting 15 U.S.C. § 1116(a)).

Plaintiff has sufficiently pleaded the likelihood of confusion between the C SPIRE Marks and Defendant's use of "C Spire" within the C Spire Digital Domain Name.[35] And while it is not necessary to prove that the harm is ongoing, the Court can confirm it is with a click of a button.[36]

To the extent the Court determines that the likelihood-of-confusion showing does not automatically satisfy elements three and four for a permanent injunction, those elements are no barrier to a permanent injunction in this case. As to the "balance of hardships," the harm of continued infringement of registered marks has been found to outweigh any harm to an infringer when it has only used a domain name (infringing those marks) for only two years. *See id.* at *7 ("[Plaintiff] is likely to suffer irreparable injury if [defendant] continues to infringe the SUCCESS Marks. [Defendant], on the other hand, has been using the Disputed Marks only since 2012 [i.e., two years], so it has invested little in developing its brand and its associated goodwill."). Here, Plaintiff has alleged that Defendant has used the C SPIRE Marks (through the C Spire Digital Domain Name) only since 2024.[37] Regardless, "any potential damage [to Defendant] done by the injunction is the result of [Defendant's] own actions that are infringing." *Id.*

Finally, "[a] permanent injunction will not disserve the public interest; in fact, it will serve it in two ways. First, it will help prevent the public from confusing [Plaintiff's] [services] with Defendant's [services]. . . . Second, it will ensure the enforcement of federal law [i.e., 15 U.S.C. § 1125(d)(1)(A)]." *Id.*

---

[35] Compl., ¶¶ 11–13, 15–20, 27, 37, 43–44 & Compl., Exs. 6–8.
[36] https://www.cspiredigital.com/; *see also* Ex. A (Holt Decl.), ¶¶ 2–3.
[37] Compl., ¶ 15.

In sum, Plaintiff has a right to a permanent injunction to support its sought relief of a transfer of the C Spire Digital Domain Name. *See, e.g.*, *Deckers Outdoor Corp.*, 2024 WL 5159302, at *5 ("[A permanent injunction] is an available remedy in a trademark infringement case where the defendant has defaulted."); *Viahart, LLC v. Does 1–54*, Case No. 6:18-CV-604-RWS-KNM, 2021 WL 777083, at *10–11 (E.D. Tex. Jan. 29, 2021). The Court should therefore issue a permanent injunction as follows: Defendant (and its officers, agents, and employees, and all persons acting in concert with them) must cease and refrain from (a) using the CSpire Digital Domain Name and (b) registering or using any other domain name that contains the C SPIRE Marks or any domain name confusingly similar to the C SPIRE Marks.

### 3. *Because Plaintiff Is Foregoing Any Monetary Relief (i.e., Damages or Attorneys' Fees), No Additional Evidence or a Hearing Is Necessary.*

For the sake of expediency and this Court's docket, and in recognition that Defendant is a foreign-headquartered entity, Plaintiff, through this Motion, is not seeking any monetary damages or attorneys' fees. As a result, Plaintiff does not need to provide the Court with any evidence in support of its requested relief sought through the default judgment. *See Seattle Bank v. Dulworth*, No. 4:22-CV-01036-O, 2023 WL 9005642, at *5 (N.D. Tex. Dec. 13, 2023) (Ray, M.J.) ("Generally, plaintiffs cannot summarily provide the Court with figures for damages or attorney's fees without explanation. Rather, they must 'establish[] the necessary facts,' either through detailed affidavits or an evidentiary hearing, to make the amount 'capable of mathematical calculation.' Here, [plaintiff] seeks only declaratory relief, not monetary damages of any kind. Because it seeks no monetary damages, there is no need for a[n] [evidentiary] hearing." (citations omitted)). Likewise, a hearing (under FED. R. CIV. P. 55(b)(2)) is not necessary. *See id.*; *see also Harper*, 2022 WL 10613547, at *2 ("Third, this Court need not hold a hearing because 'no hearing is

necessary' where a default-judgment petitioner seeks something other than 'monetary damages.'" (citation omitted)).

## IV.    PRAYER

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this Motion and enter a final judgment in this case with the following relief: (1) a judgment finding that Defendant violated the ACPA; (2) an order transferring the CSpire Digital Domain Name to Plaintiff; and (3) a permanent injunction ordering Defendant (and its officers, agents, and employees, and all persons acting in concert with them) to cease and refrain from (a) using the CSpire Digital Domain Name and (b) registering or using any other domain name that contains the C SPIRE Marks or any domain name confusingly similar to the C SPIRE Marks. Plaintiff further requests any and all further relief, at law or in equity, to which it has shown itself entitled.

Dated: September 5, 2025

Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ David C. Miller*

Jake Gipson (*pro hac vice*)
AL Bar. No. ASB-4448-W03V
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Phone: (205) 521-8678
jgipson@bradley.com

Angela Holt (*pro hac vice*)
AL Bar. No. ASB-2103-A51H
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Ave., Suite 900
Huntsville, AL 35801
Phone: (256) 517-5170
aholt@bradley.com

David C. Miller
TX Bar No. 24110114
BRADLEY ARANT BOULT CUMMINGS LLP
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, TX 75202
Phone: (214) 257-9800
dmiller@bradley.com

*Counsel for Plaintiff Cellular*
*South, Inc. d/b/a C Spire*

15

**CERTIFICATE OF SERVICE**

Service of this instrument is not required. FED. R. CIV. P. 5(a)(2). However, the undersigned nevertheless certifies that this Motion and the Clerk's Entry of Default (Dkt. 14) will be provided to Defendant through the following persons at the following addresses and email addresses:

1. Omkar Ghate (*via email and internationally recognized courier)*
   Unit 3A, PV House, 55
   Damle Road, Lane adjacent to Indsearch, Off Law College Road
   Pune, Maharashtra, India 411004

   *and*

   Unit No. 3A, PV House, F.P. No. 85, T. P. Scheme No. 1
   Damle Path, Off Law College Road
   Erandwane, Pune, Maharashtra, India 411004

   *and*

   Level 6, Suma Center
   Opp. Himali Society, Near Deenanath Mangeshkar Hospital
   Pune, Maharashtra, India 411004

   *and*

   amey.jadhav@legalogic.com; ipr@legalogic.com

2. Pavan Kakunoori (*via email and internationally recognized courier*)
   1300 W. Walnut Hill Ln., Suite 155H
   Irving, TX 75038

   *and*

   408, Shangrila Plaza, Banjara Hills
   Hyderabad, Telangana, India 500034

   *and*

   Pavan.Kakunoori@cspiredigital.com; sales@cspiredigital.com

*/s/ David C. Miller*
David C. Miller

16
