UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CELLULAR SOUTH, INC. d/b/a C SPIRE, § § § *Plaintiff*, § § v. § § C-SPIRE CONSULTING SERVICES § PRIVATE LIMITED d/b/a CSPIRE § DIGITAL, § § *Defendant*. § | Civil Action No. 3:25-CV-01756-X |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cellular South, Inc. d/b/a C Spire sued Defendant C-Spire Consulting Services Private Limited d/b/a CSpire Digital for allegedly violating the Anticybersquatting Consumer Protection Act (ACPA).[1]  Plaintiff obtained the clerk's default on liability on August 13, 2025.  (Doc. 14).  Plaintiff filed a motion default judgment against Defendant asking the Court to grant a permanent injunction that requires Defendant to cease and refrain from using <cspiredigital.com> (CSpire Digital Domain Name) and registering or using any other domain name that contains marks registered and owned by Plaintiff (C SPIRE Marks), or marks that are confusingly similar.  (Doc. 15).  For the reasons below, the Court **GRANTS** the motion for default judgment and enters judgment in favor of Plaintiff.

---

[1] Because the parties have similar names—the reason for this lawsuit—the Court will diverge from its usual practice of using the parties' names and will use "Plaintiff" and "Defendant."

1

## I. Background

Plaintiff is a technology and telecommunications company that conducts business extensively across the United States under the mark "C SPIRE." By virtue of Plaintiff's federal registrations, Plaintiff owns and has the exclusive right to use nine C SPIRE Marks, all of which include the "C SPIRE" prefix. Plaintiff uses the C SPIRE Marks in connection with all the company's goods and services. Plaintiff owns and hosts its primary website under the <cspire.com> domain. Plaintiff alleges that, beginning in or about 2024, Defendant began using <cspiredigital.com> to operate a technology-consulting business under the marks "C-Spire Consulting Services" and "CSpire Digital." Plaintiff sued Defendant for an alleged violation of the ACPA and served Defendant with service of process on July 18, 2025. When Defendant failed to answer, Plaintiff obtained a clerk's default and moved for default judgment. As of September 2025, Defendant continued to use the CSpire Digital Domain Name, and marks substantially similar to the C SPIRE marks, including "CSpire Digital."

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or

  make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

  (A) conduct an accounting;

  (B) determine the amount of damages;

  (C) establish the truth of any allegation by evidence; or

  (D) investigate any other matter.

A default requires a court to accept as true a plaintiff's well-pled allegations in a complaint.[2]

  In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances.[3] Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[4] Second, the Court assesses the merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings.[5]

---

[2] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well-pled when "all elements of [a] cause of action are present by implication"); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[3] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[4] *Id.*

[5] *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

## III. Application

Plaintiff has fulfilled all conditions precedent required to seek a default and final judgment in its favor. The Court has no reason to believe Defendant is incompetent or a minor for the purposes of the additional requirements in Rule 55(b)(2). So the Court considers the *Lindsey* factors and the sufficiency of Plaintiff's pleadings.

### A. Procedural Appropriateness of Default Judgment

Under the *Lindsey* factors, a default judgment is appropriate in this case. First, there are no material facts in dispute because Defendant has not filed any responsive pleading. Second, regarding substantial prejudice, Defendant's failure to respond could bring adversarial proceedings to a halt and substantially prejudice Plaintiff, but not itself. Third, Defendant's continual failure to respond or participate in this litigation clearly establishes grounds for the default. Fourth, regarding mistake or neglect, there is no reason to believe Defendant is acting under a good faith mistake or excusable neglect. Fifth, a default judgment would not be unduly harsh in these circumstances because Defendant was properly served, failed to appear, and is in default, which warrants a default judgment under Rule 55(b)(2). The sixth factor is whether the Court would grant a motion to set aside the default. The pleadings, the lack of response, and, consequentially, the failure to plead a meritorious defense indicate a lack of good cause for the Court to set aside the default

judgment. Thus, the Court concludes a default judgment is appropriate under these circumstances.

## B. Sufficiency of Plaintiff's ACPA Claim

Next, the Court must assess the merits of Plaintiff's ACPA claim. Although Defendant, by virtue of its default, is deemed to have admitted Cellular South's well-pled allegations, the Court must nonetheless review the complaint to determine whether it established a viable claim for relief.[6]

To prevail on an ACPA claim, a plaintiff must show three elements: "(1) [the defendant] registered, trafficked in, or used a domain name that is 'identical or confusingly similar to' the mark[s] at issue; (2) the mark was distinctive at the time the registrant registered the domain name; and (3) the registrant has 'a bad faith intent to profit from that mark.'"[7] Defendant owns, operates, and uses the CSpire Digital Domain Name. Defendant's domain name's use of "CSpire" is confusingly similar to Plaintiff's C SPIRE marks. Plaintiff registered its marks between 2011 and 2017. Defendant first used the CSpire Digital Domain name in 2024.[8] The C SPIRE marks were distinctive at the time Defendant registered and started using the CSpire Digital Domain name in connection to services similar to those offered by Plaintiff.

Under the ACPA, a court may consider nine non-exclusive factors to evaluate

---

[6] *Id.*

[7] *Sting Soccer Grp., L.P. v. Rated Sports Grp., L.P.*, 2021 WL 5280972, at *8 (N.D. Tex. Nov. 12, 2021) (Boyle, J.) (quoting 15 U.S.C. § 1125(d)(1)(A)).

[8] Doc. 1, ¶ 43.

whether the registrant has "a bad faith intent to profit from that mark."[9] These include "the trademark or other intellectual property rights of the person, if any, in the domain name," "the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person[,]" and "the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct."[10]

Plaintiff asserts that Defendant's lack of any trademark or other intellectual-property rights in the domain name when it began using the CSpire Digital domain name suffices to show that Defendant had a bad faith intent to profit from that mark. Plaintiff adds that Defendant's representation that it had an office in Irving, Texas prior to receiving Plaintiff's May 9, 2025 letter, and subsequent removal of that reference to Irving, Texas constitutes "intentional failure to maintain accurate contact information."[11] Replying to Plaintiff's "Cease-and-Desist Notice," Defendant argued that the mark was "adopted in good faith, without knowledge of or intent to trade upon [Plaintiff's] trademarks."[12] However, by virtue of Defendant's default, Defendant is deemed to have admitted Plaintiff's allegations. Thus, Plaintiff satisfies the three elements of a successful ACPA claim.

---

[9] 15 U.S.C. § 1125(d)(1)(A)(i).

[10] *Id.* § 1125(d)(1)(B)(i)(I), (II), ((VII).

[11] Doc. 15 at 10 n.34.

[12] Doc. 15-1 at 37.

## C. Relief

Instead of seeking monetary damages or attorneys' fees, Plaintiff seeks a permanent injunction. Plaintiff requests that the Court order Defendant and relevant third parties to take all necessary steps to transfer the C Spire Digital domain name to Plaintiff. If the Court finds a violation of the ACPA, it may order "the transfer of the domain name to the owner of the mark."[13] Courts recognize that domain names that are "substantially the same" as a trademark are "confusingly similar to that mark and thus create a presumption of confusion."[14] Further, courts have held that defendants who default are "deemed to have admitted to acting knowingly and intentionally."[15] Because Defendant's domain name, <cspiredigital.com> is substantially similar to Plaintiff's domain name, <cspire.com>, the Court finds an order to transfer the domain name appropriate here. Plaintiff also requests that the Court order relevant third parties, such as domain-name registrars and registries, to take all necessary steps to transfer the C Spire Digital domain name to Plaintiff. In similar cases, courts have found that it is authorized to issue such an order against a third party when it is necessary to effectuate the purposes of the injunction.[16]

The Lanham Act grants courts the power to grant injunctions, "according to

---

[13] *Pathway Senior Living LLC v. Pathways Senior Living LLC*, 2016 WL 1059536, at *5 (N.D. Tex. Mar. 17, 2016) (Lynn, J.) (cleaned up).

[14] *JTH Tax LLC v. Brown*, 2025 WL 2524304, at *10 (N.D. Tex. Sept. 2, 2025) (Kinkeade, J.) (cleaned up).

[15] *Id.*

[16] *Shine TV Ltd. v. MasterChef LLC*, 2025 WL 2165394, at *12 (N.D. Tex. May 27, 2025) (Horan, M.J.).

the principles of equity and upon such terms as the court may deem reasonable."[17]  A plaintiff seeking a permanent injunction must satisfy four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[18]

Here, the entry of default judgement is "tantamount to actual success on the merits and satisfies the first prong of the test—that Plaintiff has suffered an actual injury."[19]  Plaintiff has no adequate remedy if Defendant is permitted to continue using the mark.  There has been no showing that Defendant will suffer a hardship if it is forced to stop using the mark, but there is a substantial threat that Plaintiff will continue to suffer harm without an injunction.  The injunction will not disserve the public interest.  Thus, the Court finds Plaintiff is entitled to a permanent injunction. The Court **ORDERS** that Defendant is permanently enjoined from infringing upon Plaintiff's mark.

The remaining dispute is the scope of the injunction.  An "injunction must 'state its terms specifically' and 'describe in reasonable detail' the conduct restrained."[20]  Plaintiff requests an injunction transferring the CSpire Digital Domain to Plaintiff and requiring that Defendant (and its officers, agents, and

---

[17] 15 U.S.C. § 1116(a).

[18] *eBay Inc, v, MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[19] *Neutron Depot, LLC v. Bankrate, Inc.*, 2016 WL 215544, at *3 (S.D. Tex. Jan. 19, 2016) (citing *United State 'ex rel' M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)).

[20] *Daniels Health Scis. L.L.C. v. Vascular Health Scis. L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting FED. R. CIV. P. 65(d).

8

employees, and all persons acting in concert with them) cease and refrain from (a) using the CSpire Digital Domain Name and (b) registering or using any other domain name that contains the C SPIRE marks or any domain name confusingly similar to the C SPIRE marks.  The Court finds that Plaintiff's proposed injunction against Defendant is not overly broad.  The Court thus **GRANTS** Plaintiff's request for a permanent injunction.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment against Defendant.  The Court awards Plaintiff the injunctive relief specified in the final judgment to follow.

**IT IS SO ORDERED** this 18th day of February, 2026.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE